# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **UNITED STATES,** <br> Plaintiff, <br><br> v. <br><br> **DEIBBY GARCIA,** <br> Defendant. | **CRIMINAL ACTION** <br> **NO. 18-40014-TSH** |

### ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
### (Docket No. 215)

**May 11, 2021**

**HILLMAN, D.J.,**

On April 30, 2019, Deibby Garcia ("Mr. Garcia" or "Defendant") pled guilty to 1 count of conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 & 841(B)(1)(A)(ii), and 1 count of distribution and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(ii). On November 19, 2019, I sentenced Mr. Garcia to 120 months of imprisonment followed by 5 years of supervised release. He is serving his sentence at USP Lewisburg. On March 22, 2021, Mr. Garcia filed a Motion for Compassionate Release pursuant to 18 U.S.C. § 3582, asking that his sentence be reduced to time served or that he be resentenced to home confinement due to the risk posed by the COVID-19 pandemic. (Docket No. 215).

After hearing and for the reasons set forth below, the motion is ***denied without prejudice*** to renew upon a change in circumstances at USP Lewisburg, a change in Mr. Garcia's health or circumstances, or as new medical information about COVID-19 or COVID-19 vaccinations becomes available.

## Discussion

Section 3582(c) begins with the general principle that "a court may not modify a term of imprisonment once it has been imposed . . ." Upon motion of the Director of the Bureau of Prisons ("BOP") or a defendant, however, a court "may reduce the term of imprisonment (and may impose a term of probation and supervised release with or without conditions that does not exceed the unserved portion of the original terms of imprisonment), after considering the factors set forth in § 3553(a) to the extent that they are applicable,[1] if it finds that ". . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A).

Although the Commission has not released an updated policy statement addressing when compelling and extraordinary reasons exist for sentence reduction in the context of the COVID-19 pandemic, federal courts have used its most recent November 2018 policy statement as guidance. Under that guidance as it pertains to a defendant's medical condition, compelling and extraordinary circumstances exist when the defendant is suffering from a terminal illness or is:

---

[1] The § 3553(a) factors include: (1) the need for the sentence imposed to, among other factors, reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct; (2) the kinds of sentences available; (3) the kinds of sentences and the sentencing range established by the applicable category of offense and defendant; (4) any pertinent policy statement guidelines issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar record who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

"(I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13.

Upon consideration of the current state of the COVID-19 pandemic, including the circumstances at USP Lewisburg, along with an assessment of the relevant factors specific to the Defendant, I find that Mr. Garcia has not met the burden necessary to secure a compassionate release. The relevant factors include: (1) the seriousness of the defendant's medical condition; (2) the health, safety, and living conditions at the facility where the defendant is housed; and (3) the crime of conviction and length of the remaining sentence.

As a preliminary issue, this Court has authority to review the motion for compassionate release because Mr. Garcia has exhausted his administrative remedies.

The risks to Mr. Garcia health from COVID-19 due to conditions at USP Lewisburg appear minimal. BOP records show that as of May 10, 2021, there is one confirmed staff case and zero inmate cases of COVID-19, among a total inmate population of 688. 207 staff members and 385 inmates are fully vaccinated, or approximately 48.9% of the inmate population. FEDERAL BUREAU OF PRISONS: COVID-19 CORONAVIRUS, https://www.bop.gov/coronavirus/ (last visited May 10, 2021). 243 inmates and 80 staff members have recovered from COVID-19. *Id.*

Mr. Garcia has served approximately 39 months of his 120-month sentence and is scheduled to be released on July 25, 2026. He is 38 years old and in reasonably good health. Mr. Garcia smoked tobacco from approximately 2003 to 2015 and has been diagnosed with mild,

3

controlled, and intermittent adult-onset asthma or chronic pulmonary obstructive disorder ("COPD"), which is mostly induced by exercise. (BOP Medical Records, Docket No. 220 at 4). He has been prescribed an Albuterol inhaler to prevent asthma attacks for non-daily use, which he told BOP health care providers he uses "about once a week . . . and only for 'whistling in my chest' when he exercises." (*Id*. at 5). His physician noted in August 2020 that the Albuterol prescription was intended to last 90 days, but that Mr. Garcia had only refilled it once in six months, which also suggests that Mr. Garcia's asthma is not severe. (*Id* at 4). More recent records from March 2021 indicate that his asthma attacks may be increasing; he reported to BOP doctors that he has been experiencing about three episodes per week and was using Albuterol most nights because of tightness in his chest. (*Id*. at 52).

The Centers for Disease Control and Prevention ("CDC") reports that individuals with *moderate to severe* asthma may be at a higher risk of serious illness from COVID-19. (Docket No. 215-1 at 3) (emphasis added). Mr. Garcia also points to a Harvard University and Massachusetts General Hospital study which found that having non-allergic asthma increases the risk of a severe course of illness if a person contracts COVID-19 by as much as 48%, although that study did not distinguish the comparative risks for individuals with mild, moderate, and severe asthma. Zhu Zhaozong et al., *Association of Asthma and its Genetic Predisposition with the Risk of Severe COVID-19*, 146:2 JOURNAL OF ALLERGY AND CLINICAL IMMUNOLOGY 327, 327-29 (2020), available at https://www.jacionline.org/article/S0091-6749(20)30806-X/fulltext.

Because the CDC lists moderate to severe asthma as a condition that can increase the risk of severe illness caused by COVID-19, many courts have distinguished between petitioners with mild/moderate asthma to severe asthma when deciding whether the condition constitutes a compelling and extraordinary circumstance justifying compassionate release. *United States v.*

*Person*, 2021 LEXIS 221 at *2-3 (D. Mass. Jan. 4, 2021) (denying motion for compassionate release because asthma was only mild); *United States v. Bozochovic*, 2021 LEXIS 3368 at *5-6 (M.D. Pa. Jan. 8, 2021) (denying defendant's motion for compassionate release due to the lack of severity of his asthma). Moderate asthma occurs "'where the individual suffers from daily symptoms, experiences nighttime awakenings more than once a week, uses an Albuterol rescue inhaler on a daily basis, and experiences some limitation of normal activities.'" *United States v. Bozochovic*, 2021 LEXIS 3368 at *6 (quoting *United States v. Smith*, 2020 WL 4047485 at *3 (W.D. Pa. July 20, 2020)). Even accounting for the more recent uptick in symptoms documented in his medical records Mr. Garcia appears to fall under the mild or moderate category.

Mr. Garcia also argues that his weight puts him at an increased risk of serious illness or death from COVID-19. (Docket No. 215 at 11). The CDC lists obesity as a condition that might place an individual at a higher risk of more severe illness. However, courts generally do not find that obesity alone justifies granting a motion for compassion release. *United States v. Porter*, 2020 LEXIS 236473 at *10-12 (C.D. Ill. Dec. 16, 2020) (denying defendant's motion for compassionate release despite obesity and mild asthma); *United States v. Acevedo*, 2021 LEXIS 12755 at *3 (D. Mass. Jan. 25, 2021) (distinguishing between mild and moderate to severe asthma and denying defendant's motion for compassionate release despite their obesity); *United States v. Reynoso*, 2021 LEXIS 47833 *3-4 (D. Mass. Mar. 12, 2021) (holding that obesity accompanied with other medical conditions did not constitute extraordinary circumstances for purposes of compassionate release where petitioner was 29 years old and had not shown his health conditions substantially diminished his ability to care for himself). Moreover, Mr. Garcia is overweight, not obese. (Presentence Investigation Report at 13, ¶ 77); (Docket No. 215 at 11); (Docket No. 220 at 54, 58); (Docket No. 215 at 11).

Finally, Mr. Garcia states that it is impossible for him to follow the CDC recommendations to reduce his risk of exposure as an incarcerated person, though he provides no facts specific to the facilities or conditions at USP Lewisburg beyond the number of COVID-19 cases that have been reported there. (*See generally* Docket No. 215).

COVID-19 is a highly contagious virus and can spread quickly through densely populated areas, so I agree with Mr. Garcia's general premise that social distancing can be difficult or impossible in prison settings. However, since Mr. Garcia filed his motion on March 22, 2021, the number of reported COVID-19 inmate cases at USP Lewisburg has fallen from 162 to 0 and now nearly one half of the total inmate population has been fully vaccinated, including Mr. Garcia.[2]

I disagree with Mr. Garcia's argument that his vaccination status is irrelevant to his request for compassionate release. CDC research indicates that the Moderna and Pfizer vaccines are more than 90% effective at preventing infection fourteen days after the second dose is administered. CDC, INTERIM ESTIMATES OF VACCINE EFFECTIVENESS IN PREVENTION INFECTION AMONG HEALTH CARE PERSONNEL, FIRST RESPONDERS, AND OTHER ESSENTIAL AND FRONTLINE WORKERS, available at https://bit.ly/3tLXuQM (published on Apr. 2, 2021). New information about vaccine efficacy in prison settings, the need for a secondary "booster" vaccine, or vaccine-resistant COVID-19 variants could emerge in the future, but there is no question now that the Pfizer or Moderna vaccine has dramatically reduced Mr.

---

[2] Mr. Garcia's BOP medical records show that he initially refused the Moderna COVID-19 vaccine on January 25, 2021. (Docket No. 220 at 64, 68). However, his counsel has informed the Court that Mr. Garcia has since been fully vaccinated (Docket No. 222). Because counsel stated that Mr. Garcia received two doses of vaccine, he must have received either the Pfizer or Moderna vaccine, as these are the only two-shot COVID-19 vaccines that have been approved for emergency use by the Food and Drug Administration.

Garcia's risk of contracting COVID-19 or experiencing a severe course of illness if he should contract the virus.

Section 3582 also requires me to consider the nature of Mr. Garcia's offense and the length of his remaining sentence. To date, he still has approximately 81 months or about 67% of his sentence left to serve. Although Mr. Garcia's offense was nonviolent in nature, he was part of a group which imported and planned to distribute more than 5 kilograms of cocaine in the community. The length of his remaining sentence and the nature of the underlying offense weigh against compassionate release.

I have also considered the cases of the two partially or fully vaccinated petitioners who were granted compassionate release in the District of Massachusetts. The first was granted release from USP Lewisburg after serving more than half his sentence, when there were 33 inmate and 24 staff COVID-19 cases reported at the facility. *United States v. Murakami*, 17-cr-10346-DPW, Docket Nos. 79, 80 (D. Mass.). The second was 59 years old, had served more than half of a 327 month sentence, and had hypertension, COPD severe enough to require the use of three inhalers, and cardiac dysrhythmia, making him potentially more vulnerable to COVID-19 than Mr. Garcia. *See United States v. Bradshaw*, Case No. 96-cr-10032-DPW, Docket Nos. 791, 802, 803 (D. Mass.). By contrast, Mr. Garcia, who is overweight and has mild or moderate asthma, is 21 years younger[3] and has fewer and less serious comorbidities than Mr. Bradshaw.

---

[3] Per the CDC, the risk for severe illness with COVID-19 increases with age, with older adults at highest risk: "8 out of 10 COVID-19 deaths reported in the U.S. have been in adults 65 years old and older." Whereas an adult Mr. Bradshaw's age is 25 times more likely to be hospitalized and 440 times more likely to die from COVID-19 compared to a person between the ages of 5 and 17, an adult Mr. Garcia's age is 10 time more likely to be hospitalized and 45 times more likely to die compared to a person from the same reference group. *See* CDC, OLDER ADULTS, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited May 7, 2021).

He has served less of his sentence and is in an environment with fewer active COVID-19 cases than Mr. Murakami.

At the hearing, the Court asked the Government to provide information on the frequency of inmate testing at FCI Lewisburg because Mr. Garcia's BOP medical records appear to show that he has only been tested twice since the inception of the pandemic, on December 11, 2020 and December 21, 2020.  (Docket No. 220 at 30).  The Government submitted an additional filing which shows that the BOP has administered 1012 tests at the facility over the past 90 days; the prison's current population—822—therefore suggests that inmates are not being tested more than once every three months. While this inference, if true, is troubling, it does not warrant Mr. Garcia's immediate release from custody.

In light of the current circumstances at USP Lewisburg, the mild to moderate nature of his asthma, and the length of his remaining sentence, Mr. Garcia has failed to demonstrate the necessary compelling and extraordinary circumstances to justify his early release.  His motion is **_denied without prejudice_**.  Mr. Garcia may renew his motion upon a change in circumstances at USP Lewisburg, a change in his health or circumstances, or as new medical information about COVID-19 and asthma become available.

**SO ORDERED.**

**_/s/ Timothy S. Hillman_**
**Timothy S. Hillman**
**District Judge**